**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

IFM THERAPEUTICS, INC., FIRST  :
WAVE BIO, INC., GARY D. GLICK, and  :
LUIGI FRANCHI  :
　　　　　　　　　　　　　　　　　:
　　　　　Plaintiff,  :
　　　　　　　　　　　　　　　　　:
　　v.  :   C.A. No. 17-608-LPS
　　　　　　　　　　　　　　　　　:
LYCERA CORPORATION,  :
　　　　　　　　　　　　　　　　　:
　　　　　Defendant.  :

**UNSEALED ON**
**SEPTEMBER 5, 2018**

David A. Jenkins, Neal C. Belgam, and Eve H. Ormerod, SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, DE

Robert P. Haney, Jr. and Douglas S. Curran, COVINGTON & BURLING LLP, New York, NY

　　　Attorneys for Plaintiff


Garrett B. Moritz and Benjamin J. Schladweiler, ROSS ARONSTAM & MORITZ LLP, Wilmington, DE

Michael K. Ng and Daniel A. Zaheer, KOBRE & KIM LLP, San Francisco, CA
Angela Colt, KOBRE & KIM LLP, New York, NY

　　　Attorneys for Defendant


**MEMORANDUM OPINION**


August 31, 2018
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are Plaintiffs IFM Therapeutics, Inc. ("IFM"), First Wave Bio, Inc. ("First Wave"), Gary D. Glick ("Glick"), and Luigi Franchi's ("Franchi") (collectively, "Plaintiffs") Motion for Partial Summary Judgment (D.I. 200) and Defendant Lycera Corporation's ("Defendant" or "Lycera") Motion for Summary Judgment (D.I. 194).

For the reasons discussed below, the Court will grant in part Plaintiffs' partial motion (D.I. 200) and deny Lycera's motion (D.I. 194).

## I.    BACKGROUND

In 2006, Glick, a biopharmaceutical scientist, founded Lycera, a biopharmaceutical research company that develops treatments for diseases like cancer and autoimmune disorders. (*See* D.I. 2 ¶¶ 17-18; D.I. 20 ¶ 2)[1] Franchi, also a biopharmaceutical scientist, joined Lycera as a research scientist in 2012. (*See* D.I. 25 ¶ 5) Both Glick and Franchi are professors at the University of Michigan ("UM") and were throughout their tenure at Lycera. (D.I. 2 ¶ 17; D.I. 25 ¶ 2)

In the spring of 2015, after nine years with the company, Glick decided to resign from Lycera. (*See* D.I. 2 ¶ 19) Leading up to his departure, Glick entered into a Confidential Information and Invention Assignment Agreement with Lycera, which was to be retroactively effective as of April 7, 2009. (*See* D.I. 196 Ex. D) ("Glick CIIAA") Pursuant to that agreement, Glick undertook numerous obligations to Lycera, including "to hold [Lycera's confidential information] in the strictest confidence" and to promptly disclose and assign his interest in "all

---

[1] The Complaint is verified. (*See* D.I. 2-1) The parties have also submitted various competing declarations. (*See* D.I. 11, 20-22, 25-27, 32, 196-99, 202-04, 217-20, 223-24, 237, 239)

1

inventions . . . developments, concepts, [or] know-how" resulting from his work at the company

to Lycera.  (*Id.* ¶¶ 4(a), 5(b))  Franchi had previously executed a similar agreement with Lycera.

(*See* D.I. 20 Ex. 7) ("Franchi PIIA")

Glick and Lycera also executed a separation agreement and release with an effective date

of June 12, 2015.  (*See* D.I. 20 Ex. 5) ("2015 Glick Agreement")  In that agreement, Lycera

granted Glick and his assigns a broad release of all claims against them "occurr[ing] up until and

including [June 12, 2015]." (*Id.* ¶ 7)  Glick and Lycera also entered into a consulting agreement,

which set forth four categories of research Glick agreed not to pursue upon leaving Lycera.  (*See*

D.I. 32 Ex. 8 ¶ 3)  None of the four categories included niclosamide, an off-patent drug that

Glick informed Lycera he intended to study after leaving the company. (*See id.*; *see also* D.I. 11

Ex. A)

On July 27, 2015, shortly after Glick left Lycera, Franchi followed.  (*See* D.I. 196 ¶¶ 17-

18)  By the end of the summer, Glick and Franchi's research had progressed such that on

September 1, 2015, Glick and Franchi filed a provisional patent application related to a new use

for niclosamide to treat gastrointestinal autoimmune diseases.  (*See* D.I. 2 ¶ 53)  Glick and

Franchi assigned their rights to this intellectual property to IFM and First Wave, companies Glick

and Franchi had founded shortly after leaving Lycera.  (*See id.* ¶ 54)

Meanwhile, Lycera and UM, where Glick and Franchi remained faculty members, had

completed after substantial negotiations and executed a renewed licensing agreement for certain

Glick-invented, UM-owned patents.  (*See id.* Ex. 1) ("2016 Agreement")  As part of the 2016

Agreement, Lycera granted an extremely broad release to Glick, Franchi, and their assigns[2]:

> [Lycera] hereby fully, finally and forever release[s] . . . (in reliance upon the certifications set forth as Exhibit A made by Luigi Franchi [and] Gary D. Glick . . .) [Franchi and Glick], and their . . . assigns . . . from, and agree[s] not to sue concerning, any and all claims, demands . . . causes of action, damages . . . losses, interest, . . . and liabilities of any kind or nature whatsoever arising from or relating to any matters of any kind . . . presently known or unknown, suspected or unsuspected, reasonably discoverable or not, present, fixed or contingent that . . . [Lycera] ever had, now has or could have had against [Franchi and Glick and their assigns] from the beginning of the world to [September 7, 2016], regardless of when such claim, demand . . . cause of action, . . . damage . . . loss, [or] interest . . . accrues or ripens.

(*Id.* ¶ 2(b))  In return, Lycera was granted the same broad release from UM, Glick, and Franchi. (*See id.* at ¶ 2(a), 9-10 of 61)

Notably, as shown above, Lycera granted the release "in reliance" upon certain "certifications" from Glick and Franchi.  (*Id.* ¶ 2(b))  These certifications included a representation and warranty from both Glick and Franchi that neither had breached his confidentiality and invention assignment agreements with Lycera.[3]  (*See id.* at 9-10 of 61)  In turn, Lycera warranted that it had no knowledge of any such breach:

> To its actual and constructive knowledge, [Lycera] represents and warrants that as of [September 7, 2016], none of Luigi Franchi, Gary D. Glick, or [Glick and Franchi's business partner] Anthony W. Opipari, Jr. has breached any of the agreements referred to in Exhibit A.

_____

[2]Lycera contends that the 2016 Agreement does not apply to First Wave because First Wave is not a party to the agreement or an "assign." (*See* D.I. 222 at 18)  However, Glick and Franchi assigned their rights in the niclosmide patent application to First Wave (*see* D.I. 2 ¶ 54), making First Wave an assign for purposes of the release.

[3]Glick also certified he had not breached the 2015 Glick Agreement with Lycera. (*See id.* at 9 of 61)

(*Id.* ¶ 4)[4]

In March and May of 2017, after Glick and Franchi's niclosamide patent application was published, Lycera sent Glick and Franchi a series of letters requesting information about the patent application and demanding that Glick and Franchi assign their patent rights in the niclosamide invention to Lycera. (*See* D.I. 2 Exs. 2-3, 7-8)[5] Lycera threatened to sue if its demands were not met. (*See id.* Ex. 2 at 4, Ex. 3 at 5)

On May 25, 2017, Plaintiffs sued Lycera for (among other things) breach of contract, a declaratory judgment, and indemnification, contending Lycera's demand letters and threatened litigation amount to an actionable repudiation of the 2016 Agreement. (*See generally* D.I. 2) Plaintiffs sought a temporary restraining order, which the Court denied, and a preliminary injunction, which Plaintiffs later withdrew. (*See* D.I. 4, 37, 5, 40)

On June 16, 2017, Lycera filed its answer and asserted counterclaims against Plaintiffs (D.I. 51), which Plaintiffs answered on July 10, 2017 (D.I. 93). Thereafter, the parties filed the pending cross-motions for summary judgment. (D.I. 194, 200) The Court heard oral argument on January 17, 2018. (*See* D.I. 254 ("Tr."))

## II.    LEGAL STANDARDS

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant

---

[4]It is undisputed that the agreements referred to in Exhibit A to the 2016 Agreement are the employment and confidentiality agreements that Lycera contends Franchi and Glick violated.

[5]Glick and Franchi are currently prosecuting patents in the following areas of pharmaceutical development: a new use for niclosamide, an NLRP3 gene agonist, an NLRP3 gene antagonist, and a STING receptor agonist. (*See* D.I. 2 ¶¶ 37, 44, 51, 53) The parties address only the niclosamide invention, which is the only patent application Lycera demanded Glick and Franchi assign to it. (*See* D.I. 2 Exs. 2-3)

summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating that party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine

only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50

(internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating

entry of summary judgment is mandated "against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in

support of the nonmoving party's position is insufficient to defeat a motion for summary

judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving

party. *Anderson*, 477 U.S. at 252.

## III.  DISCUSSION

### A.  The 2016 Agreement

Plaintiffs contend the entire dispute among the parties can be disposed of based on the

2016 Agreement. (*See generally* D.I. 201) It is undisputed that Michigan law governs the 2016

Agreement. (*See* D.I. 201 at 12 n.9; D.I. 195 at 18 (applying Michigan law); *see also Rubin v.

Gallagher*, 292 N.W. 584, 586 (1940) ("The validity and construction of a contract are controlled

and to be determined by the laws of the situs, or place where the contract was entered into."))

Under Michigan law, the Court's principal duty in interpreting a contract is to give effect

to the parties' intentions. *See Quality Prods. Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d

251, 259 (Mich. 2003). "The scope of a release is governed by the intent of the parties as it is

expressed in the release. If the text in the release is unambiguous, the parties' intentions must be

ascertained from the plain, ordinary meaning of the language of the release." *Cole v. Ladbroke*

6

*Racing Mich., Inc.*, 614 N.W.2d 169, 176 (Mich. Ct. App. 2000). If a contract is ambiguous, a court may a court rely on extrinsic evidence to determine a provision's meaning. *See Shay v. Aldrich*, 790 N.W.2d 629, 637 (Mich. 2010). Whether a contract is ambiguous is a question of law. *See Farm Bureau Mut. Ins. Co. of Mich. v. Nikkel*, 596 N.W.2d 915, 918 (Mich. 1999).

The parties agree that the language of the 2016 Agreement is clear and unambiguous (*see* D.I. 201 at 13; D.I. 236 at 5; Tr. at 72-73), and the Court agrees. The plain language of the 2016 Agreement bars Lycera from bringing claims and demands "of any kind . . . presently known or unknown, suspected or unsuspected, reasonably discoverable or not, present, fixed or contingent that . . . [Lycera] ever had, now has or could have had," occurring any time before the effective date of the release, September 7, 2016. (*See* 2016 Agreement ¶ 2(b))

In the face of this unambiguous, broad release, Lycera contends that the 2016 Agreement is either unenforceable or inapplicable to the claims and counterclaims pending before the Court. (*See* D.I. 222 at 8-11, 17-18) The Court now considers those contentions.

**1.    Enforceability of the 2016 Agreement**

Lycera argues that the 2016 Agreement is unenforceable because Glick and Franchi were in breach of their warranties. (*See id.* at 8-11) According to Lycera, this means (1) Lycera's performance under the agreement was excused; (2) there was the non-occurrence of a condition precedent to Lycera's performance (and thus, Lycera's obligations under the agreement were never triggered); and (3) the agreement is voidable as induced by fraud. (*See id.* at 9)

The Court disagrees. To start, the Court is not persuaded that Lycera's performance under the agreement was excused. While "one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform,"

7

contractual performance is excused only if the other party's breach was "substantial." *Able Demolition v. Pontiac*, 739 N.W.2d 696, 701 (Mich. 2007) (internal quotation marks omitted). "To determine whether a substantial breach occurred, a trial court considers whether the nonbreaching party obtained the benefit which he or she reasonably expected to receive." *Id.* (internal quotation marks omitted). This requires a court to consider the "central purpose of the agreement." *Id.*

Though Lycera contends that obtaining the warranties from Glick and Franchi was the central purpose of the 2016 Agreement, this argument is unpersuasive. The benefits Lycera reasonably expected to receive from the 2016 Agreement were (1) the reciprocal general releases from UM, Glick, and Franchi and (2) renewed licensing agreements for the UM patents. The majority of the contract's substance concerned the terms of the UM–Lycera licensing agreement (*see* 2016 Agreement ¶¶ 5-12) and mutual releases (*see id.* ¶¶ 2-4). While obtaining the certifications from Glick and Franchi may have given Lycera comfort in granting the releases, the plain language of the agreement belies the suggestion that obtaining that comfort was the central purpose of the agreement.

Moreover, adopting Lycera's interpretation of the warranties would render the parties' mutual exchange of releases meaningless, an outcome the Court must avoid. *See Quality Prods.*, 666 N.W.2d at 259 (requiring court to enforce contract "as written"). As Plaintiffs correctly state, "[U]nder Lycera's theory, the only way Drs. Glick and Franchi could enforce the release would be to litigate the merits of Lycera's claims against them in order to determine whether they have breached their agreements." (D.I. 238 at 8) But if Plaintiffs were required to litigate the merits of Lycera's claims, they would be deprived of the very benefit the parties bargained for

8

and expected to receive under the 2016 Agreement: freedom from litigation. *See Story v. Page*, 273 N.W. 384, 387 (Mich. 1937) ("[T]he very essence of a release is to avoid litigation, even at the expense of strict right.") (quotation marks omitted).  To allow Lycera to force Plaintiffs to do so would negate the clear purpose of the 2016 Agreement's mutual releases.

Nor was the accuracy of the warranties a condition precedent to Lycera's release obligations, the non-occurrence of which excused Lycera from having to release Glick and Franchi.  "A condition precedent is a fact or event that the parties intend must take place *before* there is a right to performance." *Able Demolition*, 739 N.W.2d at 700 (emphasis added) (internal quotation marks omitted).  Here, the 2016 Agreement does not contain any provision requiring Glick's and Franchi's warranties to be accurate before Lycera's obligation to release Glick and Franchi ripened. *See generally id.* at 701 (holding contract provision requiring demolition company to "obtain a letter to proceed before each demolition, in order to trigger its right to payment" to be condition precedent).  Indeed, reading Glick's and Franchi's warranties as conditions precedent to Lycera releasing claims would result in the same nonsensical outcome the Court discussed just above.  Adopting Lycera's view would mean the only way Lycera could *ever* be required to release a claim would be *after* the parties had litigated the accuracy of Glick's and Franchi's warranties.  Meaning, in effect, that Lycera would never have to release a claim, thus rendering the release worthless to Plaintiffs.  Entering into the 2016 Agreement "in reliance" on Glick's and Franchi's certifications is not the same as expressly stating the certifications must be proven to be accurate before Lycera is required to perform the obligations it agreed to undertake – including foregoing pursuing all claims "of any kind . . . presently known or unknown, suspected or unsuspected, reasonably discoverable or not" (2016 Agreement ¶ 2(b)).

9

Finally, Lycera contends that the 2016 Agreement is voidable because it was procured by fraud. (*See* D.I. 222 at 11)  Under Michigan law, to prove fraud Lycera must show that: (1) Franchi and Glick made a material misrepresentation; (2) was false; (3) Glick and Franchi knew was false at the time, or was made "recklessly, without any knowledge of its truth and as a positive assertion;" (4) Glick and Franchi made the representation with the intent for Lycera to act on it; (5) Lycera did act in reliance on it; and (6) Lycera was injured as a result. *See Titan Ins. Co. v. Hyten*, 817 N.W.2d 562, 567-68 (Mich. 2012).  Lycera must prove all six elements by clear and convincing evidence. *See Schwartz v. Elec. Data Sys., Inc.*, 913 F.2d 279, 285 (6th Cir. 1990).  "[T]he absence of any one of [these elements] is fatal to a recovery." *Hyten*, 817 N.W.2d at 568.

Lycera contends that the 2016 Agreement was fraudulently induced because "Plaintiffs falsely asserted they had not breached their agreements; the agreement on its face demonstrates that the representations were made with the intent that Lycera rely upon them; and Lycera did rely on them." (D.I. 222 at 11)  Plaintiffs counter that Lycera has produced no evidence that Glick and Franchi knew their warranties were false or that Lycera's reliance on them was reasonable. (*See* D.I. 238 at 7)

The Court agrees with Plaintiffs.  Even assuming Glick's and Franchi's representations were material and false, Lycera does not point to any evidence that Glick and Franchi knew their representations were false when they made them. (*See* D.I. 222 at 11)  Instead, Lycera argues only that the representations were, in fact, false. (*See id.*)  The most generous interpretation of Lycera's fraud argument, then, is that Glick and Franchi **must** have known they were violating their obligations to Lycera when they signed the 2016 Agreement.  While such an argument may

suffice in some cases, here, it does not.

If Plaintiffs' representations were clearly and demonstrably false, it might then be reasonable to infer that Glick and Franchi knew their representations were false. *See, e.g.*, *Farrell v. Farm Bureau Ins.*, 2017 WL 5759800, at *5-6 (Mich. Ct. App. Nov. 28, 2017) ("At his deposition, plaintiff was aware that he was terminated, yet he testified that he had never been subject to a disciplinary action, which was patently false."). But, that is not the situation presented here. Whether Plaintiffs breached their obligations to Lycera is hotly contested, and whether Plaintiffs did breach appears to turn on how one interprets the evidence. (*See, e.g.*, D.I. 218) (offering competing characterization of purpose of emails) Indeed, Glick and Franchi vigorously deny any wrongdoing, insisting they believed their warranties were true. (*See, e.g.*, D.I. 32 ¶¶ 5, 10, 21, 25; D.I. 25 ¶¶ 6-8; D.I. 218 ¶¶ 3, 12) Under these circumstances, it is not enough for Lycera simply to allege "Plaintiffs falsely asserted they had not breached their agreements" to support a claim of fraud. *See* Fed. R. Civ. P. 56(c)(1)(A) (requiring party "asserting that a fact cannot be or is genuinely disputed" to support assertion by "citing to particular parts of materials in the record"); *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir.1993) ("A trial court is not required to speculate on which portion of the record [a] party relies."); *see also Anderson*, 477 U.S. at 255-56 (holding that where nonmoving party must prove its claim by clear and convincing evidence, court must examine evidence and determine whether jury could find for plaintiff under that standard).

The only evidence Lycera cites that potentially relates to Glick's and Franchi's knowledge – which Lycera cites in the context of a different argument – is that "Plaintiffs apparently took measures to actively cover their tracks." (D.I. 222 at 16) For this assertion,

11

Lycera relies on the fact Glick recycled his work computer after leaving Lycera and that 80% of the files on Franchi's work computer were corrupted when he left Lycera. (*See* D.I. 223 Ex. C at 361:14-362:8; D.I. 223 ¶ 40) In the face of Glick's and Franchi's denials of any wrongdoing and their explanations for all of their alleged wrongdoing, Lycera's evidence amounts to little more than speculation that Glick and Franchi had any awareness that they were in breach of their obligations to Lycera. *See Podobnik*, 409 F.3d at 594. It cannot amount to clear and convincing evidence of fraud. *See In re Auto Specialties Mfg. Co.*, 153 B.R. 503, 508 (W.D. Mich. 1993) ("[F]raudulent intent is not a reasonable inference to be drawn from the evidence cited by the Trustee, and it certainly is not the only inference that can be drawn from the evidence. The evidence is at best colorable, and that is not sufficient to withstand a well-supported motion for summary judgment.").

Thus, even taking the record evidence in the light most favorable to Lycera, no reasonable factfinder could find, by clear and convincing evidence, that Lycera has shown each of the elements of fraud. One of the fraud elements on which Lycera has failed to meet its burden deserves some additional discussion. This is the element of whether Lycera's purported reliance on Glick and Franchi's warranties was reasonable.

"An additional requirement for [the reliance] element [of fraud] . . . is that the [party's] reliance on the alleged misrepresentation must have been reasonable." *MacDonald v. Thomas M. Cooley Law Sch.*, 724 F.3d 654, 662-63 (6th Cir. 2013). This is because "[t]here can be no fraud where a person has the means to determine that a representation is not true." *Nieves v. Bell Indus., Inc.*, 517 N.W.2d 235, 238 (Mich. Ct. App. 1994). Under Michigan law, reliance is unreasonable only when "the allegedly defrauded party was given ***direct information*** refuting the

[defrauding party's] misrepresentations." *Hyten*, 817 N.W.2d at 568 n.4 (emphasis added). Generally, there is no "duty to attempt to acquire such knowledge." *Id.*

Application of these concepts to the circumstances here is complicated by the undisputed fact that Lycera warranted that to its ***actual and constructive knowledge*** Glick and Franchi had not breached their obligations to Lycera. (*See* 2016 Agreement ¶ 4) Lycera does not contest that the warranties it provided to Glick and Franchi could "excuse[]" any falsity in Glick and Franchi's warranty and thereby "save[] the release." (D.I. 222 at 13) Further, as Plaintiffs contend, without dispute from Lycera, the 2016 Agreement "on its face, reflects an intent to bar claims as to which Lycera had [either actual or] 'constructive' knowledge." (D.I. 201 at 15) (quoting 2016 Agreement ¶ 4)

With respect to Lycera's actual knowledge, the record demonstrates a genuine dispute of material fact as to whether Lycera had direct information refuting Glick and Franchi's representations. Plaintiffs point to evidence from which a reasonable factfinder could find that Lycera had actual knowledge of Glick and Franchi's purported breach – that is, the nicolsamide research they performed before execution of the 2016 Agreement – before Lycera entered into the agreement. That record includes a May 13, 2015 email from Glick to Lycera CEO Paul Sekhri, in which Glick informed Sekhri that Glick planned to pursue research into the "[e]ffects of niclosamide and targeted analogs on autoimmune and metabolic disease" once he left Lycera. (*See* D.I. 11 Ex. A) This email was forwarded to and discussed by Lycera's Executive Committee, which declined Glick's invitation to collaborate on the work. (*See* D.I. 204 Ex. H, J) Additionally, Stephen Davis, Lycera's general counsel – and the attorney who represented Lycera in negotiating the 2016 Agreement – was also Plaintiff First Wave's attorney and an investor in

13

First Wave. (*See* D.I. 204 Ex. E ("Davis Dep.") at 14:12-15:7; 24:5-22; 25:15-19)  In his role as

First Wave's attorney, Davis helped negotiate a licensing deal for First Wave's niclosamide-

related intellectual property, in connection with Glick informed Davis that one milestone should

be defined as the "first IBD patient dosed with [a] niclosamide product specifically formulated

for IBD." (D.I. 204 Ex. R)  In his role as an investor in First Wave, Davis learned that First

Wave had a provisional patent application related to niclosamide. (*See* D.I. 204 Ex. Q at 1, 12,

28)  Davis received all of this information prior to negotiating the 2016 Agreement on behalf of

Lycera. (*See* D.I. 204 Ex. R, Ex. Q)  Timothy Mayleben, a member of Lycera's board of

directors, was another investor in First Wave. (*See* D.I. 204 Ex. A ("Sekhri Dep.") at

218:10–219:24)  Lycera CEO Sekhri was aware of both Davis' and Mayleben's involvement

with Glick's company. (*See id.*)

      While a reasonable factfinder who was not required to take all of this evidence in the light

most favorable to Lycera could well find that Lycera had actual, direct knowledge of Glick and

Franchi's purported breaches, such a factfinder would not be required to do so, especially when

taking the evidence in the light most favorable to Lycera.  As Lycera points out, none of the

evidence Plaintiffs identify amounts to actual knowledge of the timing of Plaintiffs' niclosamide

research and invention. (*See* D.I. 222 at 13)  A factfinder would not have to find that Plaintiffs

told Lycera about the invention or that Lycera had actual knowledge that Glick and Franchi

researched niclosamide secretly while they were employed by Lycera. (*See* D.I. 222 at 13)

      But the conclusion is different with respect to constructive knowledge.  In the 2016

Agreement, Lycera warranted that Plaintiffs had not breached their obligations to Lycera "[t]o its

actual ***and constructive*** knowledge." (2016 Agreement ¶ 4) (emphasis added)  The Court

14

concludes that a reasonable factfinder could only find that Lycera did have constructive knowledge that Glick and Franchi's representations were not true. The Court agrees with Plaintiffs that the term "constructive knowledge" is unambiguous and therefore Lycera must be "charged with knowledge of whatever information it could have ascertained through reasonable diligence." (*See* D.I. 201 at 16 & n.11)[6]

Lycera must be held to its "constructive knowledge" of any breaches. Constructive knowledge is the "[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." *Goldman, Sachs & Co. v. Athena Venture Partners, L.P.*, 803 F.3d 144, 148 (3d Cir. 2015) (internal quotation marks omitted); *see also People v. Baig*, 2001 WL 738403, at *1 (Mich. Ct. App. June 29, 2001) ("According to Black's Law Dictionary . . . an individual has constructive knowledge if . . . by exercise of reasonable care [one] would have known a fact." (internal quotation marks omitted)). "Under Michigan law, the knowledge of a corporate agent [acquired in the scope of their employment] can be imputed to the entire corporation." *In re NM Holdings Co., LLC*, 622 F.3d 613, 620 (6th Cir. 2010); *see also Westfield Ins. Co. v. Enter. 522, LLC*, 34 F. Supp. 3d 737, 746 (E.D. Mich. 2014) (imputing

---

[6]To adopt the contrary interpretation Lycera proposes would read the "constructive knowledge" warranty out of the 2016 Agreement, which would be improper. *See Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 453 (Mich. 2003) ("[C]ontracts must be construed so as to give effect to every word or phrase as far as practicable.") (internal quotation marks omitted). Moreover, the cases Lycera cites for the proposition that one party's warranty relieves another's obligation to conduct due diligence do not stand for the broad proposition Lycera urges. For example, *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007) – a case applying New York fraud law – "instructs [that] New York authority follows a two-tier standard in assessing the duty of the party claiming fraud, according to whether the misrepresentations ***relate to matters peculiarly within the other party's knowledge***." And, as Plaintiffs point out, none of the cases Lycera cites "involve[] a contract that ties a release to the releasing party's 'constructive knowledge.'" (D.I. 238 at 6)

knowledge of contents of report provided to company, even though employee never read report). Thus, Lycera will be held to have had the knowledge it could have obtained using reasonable care or diligence prior to executing the 2016 Agreement.

When Lycera sent its demand letters to Plaintiffs in 2017 – alleging breaches of Plaintiffs' contractual obligations and demanding Plaintiffs assign the niclosamide patent to Lycera (*see, e.g.*, D.I. 2 Ex. 2 at 3) – they did so based on Plaintiffs' provisional patent application and Lycera's investigation to that point (*see* D.I. 204 Ex. D at 95:22-99:14). Lycera's demand letters were based on documents Lycera found on their own employee's computers. (*See* D.I. 204 Ex. D at 95:22-99:14) Lycera stated in the demand letters that Plaintiffs' breaches were "apparent" based on documents in Lycera's own possession and the provisional patent application, further demonstrating that Lycera could have known of the alleged breaches (and therefore had constructive knowledge of it) prior to entering into the 2016 Agreement. (*See, e.g.*, D.I. 2 Ex. 2)

Moreover, Lycera's own attorney, Davis, knew about the provisional patent application at the time Lycera executed the 2016 Agreement. (*See* D.I. 222 at 16) In the Court's view, Lycera's general counsel's actual knowledge of the patent application here must be found to have provided Lycera with (at least) constructive knowledge, even though Davis learned of the patent application in his individual capacity. (*See* D.I. 204 Ex. Q) The undisputed record further shows that Lycera CEO Sekhri asked Davis about Glick's company (and Davis answered the questions without reservation) (*see* Sekhri Dep. at 219:2-13, 222:4-23), indicating that Sekhri relied on Davis (and the information he received in his "individual" capacity) to decide whether Lycera, as a company, should be concerned about Glick's company's work.

Further, as Plaintiffs note, the undisputed record shows that Lycera (1) had possession of

16

Franchi's and Opipari's computers and could have run searches on them; (2) had searched Glick's computer in 2015 and could have done so again; (3) discovered much of the evidence it relies on now by running a basic search on Lycera employees' computers; and (4) was on good terms with Glick and could have asked him about his work on niclosamide – all of which Lycera could have done before signing the 2016 Agreement. (*See* D.I. 201 at 17; D.I. 238 at 5)  As Plaintiffs contend, it was within Lycera's reasonable ability to have nearly all the evidence on which it relied when it sent demand letters to Glick and Franchi much earlier – crucially, prior to the date it signed the 2016 Agreement. (*See* D.I. 201 at 16-17)  Particularly given Lycera's insistence that its intellectual property is its lifeblood (*see, e.g.*, Tr. at 47), reasonable diligence on Lycera's part would have caused it to inquire into the limited (six) topics Glick told Lycera he planned to pursue after leaving the company (*see* D.I. 11 Ex. A), which would have revealed all or nearly all that Lycera claims it needed to know.

Therefore, the Court will grant summary judgment to Plaintiffs that the 2016 Agreement is enforceable.  Taking the record in the light most favorable to Lycera, Lycera cannot prove any of its purported bases for finding the agreement unenforceable: that Lycera's performance was excused, that Glick and Franchi failed to perform a condition precedent, or that Lycera's execution of the agreement was induced by fraud. *See Celotex*, 477 U.S. at 322 (stating entry of summary judgment mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"); *Hastings Mfg. Co. v. Melton Sales & Serv., Inc.*, 2006 WL 288413, at *3 (W.D. Mich. Feb. 6, 2006) (denying motion for summary judgment on fraud claim due, in part, to lack of evidence "suggest[ing] [saleman] made the statement with a fraudulent intent or

purpose"). To allow Lycera to litigate against Plaintiffs about events occurring prior to September 7, 2015 would defeat the purpose and clear intent of the parties in executing the 2016 Agreement.

### 3.      Application of the 2016 Release

Lycera further contends that even if the 2016 Agreement is enforceable, it does not preclude Lycera's claims because (i) Lycera owned the disputed invention automatically under Glick's and Franchi's "present assignment" agreements, and (ii) Lycera's claims are based on conduct occurring after the effective date of the release. (*See* D.I. 222 at 17-18) As explained below, the Court disagrees.

### a.      Effect of "present assignment" agreements

Lycera contends the 2016 Agreement is inapplicable because the Glick CIIAA and Franchi PIIAA are "present assignment" contracts, under which Glick and Franchi assigned to Lycera title to "any and all inventions" as of the moment of the invention's conception. (D.I. 222 at 17-18) (quoting Glick CIIAA ¶ 5(b); Franchi PIIAA ¶ 4(a)) That moment, Lycera contends, occurred before the effective date of the 2016 Agreement, thereby giving Lycera automatic title to the disputed invention and making "[a]ny subsequent attempt to contract those rights away . . . invalid and void." (*Id.* at 17-18)

Plaintiffs dispute that the moment of conception occurred while Plaintiffs were still employees of Lycera. (*See* D.I. 201 at 19-20) Additionally, regardless of whether Lycera ever owned the invention, Plaintiffs contend that Lycera released any ownership claim it may have had in the 2016 Agreement. (*See* D.I. 216 at 10-11)

The Court agrees with Plaintiffs. Lycera's attempts to circumvent the 2016 Agreement

18

by arguing it already held actual title, and not a claim to title, are unpersuasive. The language of the 2016 Agreement is extremely broad, extending to "any and all claims." (2016 Agreement ¶ 2(b)) Nowhere in the agreement is this language narrowed or otherwise modified to exclude claims to ownership. *Cf. Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 846 (Fed. Cir. 2009), *aff'd*, 563 U.S. 776 (2011) ("[The company]'s *claim* to [the scientist]'s patent rights is based on [the] written agreement.") (emphasis added). Having not expressly excised ownership claims from the contract's language, the release is properly construed as applying to such claims. *See Terrill v. Stacy*, 2006 WL 473799, at *2 (Mich. Ct. App. Feb. 28, 2006) ("We have repeatedly held that there is no broader classification than the word 'all.'"). To hold otherwise would, once again, allow Lycera to circumvent the protections Plaintiffs bargained for by simply asserting (in a claim) that Lycera held title (and not a claim to title) to the inventions. Instead, the Court concludes that to the extent Lycera ever owned Plaintiffs' ideas (or inventions), it released any ownership claims it may have had by executing the 2016 Agreement.

**b.    Timing of allegedly wrongful conduct**

Lycera also contends that even if the 2016 Agreement is valid, it does not bar Lycera's claims because its claims are based on conduct occurring after September 7, 2016. (*See* D.I. 222 at 18) Specifically, Lycera contends it seeks relief based on Plaintiffs' "(a) prosecution of the patent application . . . (b) assignment of the application to First Wave in May 2017, and (c) continued development of a business based on the invention." (*Id.*) In Lycera's view, these acts constitute the conduct by which Glick violated his "obligation to hold the invention 'in trust for the sole right and benefit of Lycera.'" (*Id.*) (quoting D.I. 196 Ex. D ¶ 5(b))

19

Lycera's argument would only have force if Lycera were correct that it had an ownership right in the patent application. But the Court has already concluded, as explained above, that Lycera never had such an ownership interest and, if it had, it released it in the 2016 Agreement. Accordingly, Lycera's argument fails.

* * *

Having found the 2016 Agreement enforceable and applicable, the Court now turns to applying it to the various causes of action and counterclaims in this case.

**B.    Plaintiffs' and Lycera's Motions for Summary Judgment ("MSJ") for Breach of the 2016 Agreement (First Cause of Action)**

Plaintiffs seek summary judgment that Lycera breached the 2016 Agreement by sending the March and May 2017 demand letters and threatening to sue Glick and Franchi based on conduct occurring prior to the effective date of the release.[7] (*See* D.I. 201 at 17) Lycera seeks summary judgment that it did not breach the 2016 Agreement. (*See* D.I. 195 at 2)

As noted previously, it is undisputed that Michigan law governs the 2016 Agreement. "Under Michigan law, the elements of a breach of contract claim are the following: (1) a contract existed between the parties, (2) the terms of the contract required performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury." *Green Leaf Nursery, Inc. v. Kmart Corp.*, 485 F. Supp. 2d 815, 818 (E.D. Mich. 2007). The first two elements are undisputed: the parties agree on the existence of the 2016 Agreement and that the express terms of that Agreement require Lycera "not to sue" Glick, Franchi, or their assigns for

---

[7]Plaintiffs seem to suggest that Lycera asserting counterclaims against Plaintiffs may also constitute a breach of the 2016 Agreement. (*See, e.g.*, D.I. 201 at 17) This is not – nor could it have been – what Plaintiffs sued Lycera for in their First Cause of Action (*see* D.I. 2), and the Court will not address any argument Plaintiffs may be advancing to that effect.

"any and all claims, demands . . . or causes of action." (2016 Release Agreement ¶ 2(b)) Lycera contends that Plaintiffs' claim fails as a matter of law because Plaintiffs cannot show either breach or injury, as Plaintiffs sued Lycera (and not vice versa) and Lycera's compulsory counterclaims cannot constitute breaches. (*See* D.I. 222 at 18)

"Anticipatory repudiation is 'when the promisor unequivocally disavows any intention to perform when the time for performance comes.'" *Baker v. Abramson*, 2005 WL 3304563, at *1 (Mich. Ct. App. Dec. 6, 2005) (quoting Black's Law Dictionary (8th ed. 2004)) (unpublished). In the 2016 Agreement, Lycera agreed not to sue Glick and Franchi or their assigns for claims of any kind, necessarily including any matter raised in the March and May letters. (2016 Agreement ¶ 2(b)) Then Lycera threatened to sue Plaintiffs if its demands were not met. (*See, e.g.*, D.I. 2 Ex. 2 at 4) While Lycera did not sue Plaintiffs, sending letters alleging Plaintiffs had breached their obligations to Lycera and demanding assignment of patent rights – ones that Plaintiffs had clearly communicated to Lycera they believed Lycera had no right to and had no intention of signing over (*see* D.I. 2 Ex. 4) – and threatening to sue Plaintiffs if those demands were not met constituted an unequivocal disavowal of Lycera's obligations to honor the releases it provided under the 2016 Agreement. Accordingly, Lycera anticipatorily breached the 2016 Agreement, thus entitling Plaintiffs to sue immediately. *See Paul v. Bogle*, 484 N.W.2d 728, 735 (Mich. Ct. App. 1992).

On the issue of injury, Plaintiffs contend Lycera's actions have caused them to incur significant attorneys' fees, delayed First Wave's clinical trials, and caused investors to walk away from First Wave, thereby harming Plaintiffs. (D.I. 201 at 18) "The general rule in breach of contract actions is that damages recoverable for a breach of contract are those arising naturally

21

from the breach or those which were within the parties' contemplation at the time of contracting." *Hajciar v. Crawford & Co.*, 369 N.W.2d 860, 862 (Mich. Ct. App. 1985) (internal quotation marks omitted). Glick testified by deposition that First Wave lost the support of multiple, significant investors due to this litigation, with some investors withdrawing total support for First Wave and some withdrawing support for its clinical trials. (*See* Glick Dep. 246:9-248:7) Such a result was reasonably foreseeable from Lycera threatening to sue Plaintiffs. Thus, Plaintiffs have demonstrated, at least based on their "hampered" ability to fundraise and conduct clinical trials, a harm that, if suffered, is legally cognizable.

As to the factual question of whether Plaintiffs were injured by Lycera's threatened litigation, the evidence in the record demonstrates that they were. Lycera has not produced any evidence to contradict Glick's deposition testimony that First Wave lost the support of significant investors based on the pending litigation. Thus, on the record before the Court, there is no genuine dispute of material fact that Plaintiffs were harmed by Lycera's actions.

Therefore, the Court will grant summary judgment to Plaintiffs on their First Cause of Action and will deny Lycera's motion for summary judgment on the First Cause of Action.

> **C.    Plaintiffs' MSJ for Declaratory Judgment of Non-Violation of the DTSA (Second Cause of Action) and Plaintiffs' and Lycera's MSJ on Lycera's Counterclaims**

Plaintiffs seek summary judgment on (i) their Second Cause of Action, which seeks a declaratory judgment that they did not violate the Defend Trade Secrets Act of 2016 ("DTSA") and (ii) Counts I-XI of Lycera's Counterclaims. (*See* D.I. 201) Lycera seeks summary judgment

on Counts II, III, VI, VII, and XI of its counterclaims.[8]  (*See* D.I. 195 at 2)  Because these claims are premised on either activity occurring prior to the effective date of the 2016 Agreement, or an ownership claim that Lycera did not have or released in the 2016 Agreement, summary judgment will be entered in Plaintiffs' favor and denied to Lycera.[9]  *See Cole*, 614 N.W.2d at 176 (stating release bars claim for released matter).

### D.    Plaintiffs' MSJ Relating to Indemnification (Sixth Cause of Action)

Finally, Plaintiffs seek summary judgment that Glick is entitled to indemnification pursuant to his indemnification agreement with Lycera.  (*See* D.I. 201 at 20; *see also* D.I. 2 Ex. 9 ("Glick Indemnification Agreement"))  Lycera responds that the Court lacks jurisdiction to decide this issue, indemnification is premature, and Glick is not entitled to indemnification because his breaches do not arise "by reason of" his corporate status.  (*See* D.I. 222 at 20)

The Court agrees with Lycera.  The Indemnification Agreement contains a mandatory forum selection clause which appears to require that disputes arising under it be brought in Delaware state court and not here.  (*See* Glick Indemnification Agreement § 20 (stating parties "irrevocably and unconditionally . . . agree that any action or proceeding arising out of or in connection with [the Glick Indemnification Agreement] ***shall be brought only*** in the Chancery Court of the State of Delaware . . . and not in any other state or federal court"); s*ee also Carlyle*

---

[8]The Court has interpreted Lycera's summary judgment motion (D.I. 194) and briefing (*see, e.g.*, D.I. 195 at 2), which request summary judgment on Count "VIII (breach of warranty)," to refer to Count VII, Lycera's breach of warranty claim, rather than Count VIII, which is Lycera's fraudulent misrepresentation and fraud by omission claim (*see* D.I. 51 ¶¶ 193-203).

[9]Plaintiffs also raise the 2015 Glick Agreement as a ground for barring Lycera's claims. (*See* D.I. 201 at 12)  Having found the 2016 Agreement to be enforceable and a bar to Lycera's counterclaims, the Court need not decide whether Lycera's counterclaims are also barred under the 2015 Glick Agreement.

*Inv. Mgmt., L.L.C. v. Carlyle Capital Corp.*, 800 F. Supp. 2d 639, 644 (D. Del. 2011) ("A forum selection clause does not oust a court of subject matter jurisdiction.  However, while the federal court has jurisdiction, it should decline to exercise it [when such a clause exists].") (internal citations and quotation marks omitted); *see also Jones v. Custom Truck & Equip., LLC*, 2011 WL 250997, at *6 (E.D. Va. Jan. 25, 2011) (transferring case to forum specified in mandatory forum selection clause where contract had competing mandatory and permissive forum selection provisions))

Additionally, as of the time of the parties' briefing, Glick's claim was premature, as the Glick Indemnification Agreement states "no determination as to entitlement to indemnification . . . shall be required to be made prior to the final disposition of the" litigation and requires a showing that Glick was successful on the merits or otherwise.  (*See* Glick Indemnification Agreement Ex. 9 §§ 7(f), 1(c))

Therefore, Plaintiffs' motion for summary judgment as to their Sixth Cause of Action will be denied.

## IV.    CONCLUSION

An appropriate Order follows.

24